UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CANDIE YER HERR
and ERIC ZOOVES HERR,

          Plaintiffs,

  v.

SCOTT R. HALLOIN, JUDGE DAVID BOROWSKI
and WILLSHIRE QUINN INCOME FUND REIT, INC.,

          Defendants.

Case No. 25-cv-1518-pp

---

**ORDER SCREENING COMPLAINT, DENYING MOTION FOR PRELIMINARY HEARING AND TO SEAL CASE (DKT. NO. 4) AND DISMISSING CASE**

---

On October 2, 2025, the plaintiffs—representing themselves—filed a "Non Statutory Petition in Equity" seeking an order enjoining the defendants from violating the automatic stay during the pendency of the plaintiffs' bankruptcy case. Dkt. No. 1. On October 10, 2025, the court received a letter from the petitioners requesting a preliminary hearing and asking the court to seal the case. Dkt. No. 4. The court will deny the plaintiffs' request for a preliminary hearing and to seal the case. Because the complaint does not state a claim for relief and amendment would be futile, the court will dismiss the case.

**I.    Screening the Complaint**

    A.    <u>Legal Standard</u>

The plaintiffs have paid the filing fee. But "district courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike,

1

regardless of fee status." Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999); see also Rezny v. Wis. Dep't of Fin. Insts., Case No. 22-C-1285, 2022 WL 17551151 at *1 (E.D. Wis. Dec. 9, 2022) (stating that courts are free to screen a complaint for a self-represented plaintiff who has paid the full filing fee under 28 U.S.C. §1915(e)(2)). The court will exercise that authority here.

At the screening stage, the court must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and

conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

B. The Complaint

The plaintiffs' "Non Statutory Petition in Equity for a Mandatory Injunction and other Equitable Relief Request" is eighteen pages long, dkt. no. 1; the plaintiffs attached 287 pages of exhibits, dkt. no. 1-1. The plaintiffs state that they are seeking a "Non Statutory Petition in Equity for a preliminary and permanent mandatory injunction" against the defendants, who they allege have "engaged in a persistent pattern of conduct" to circumvent the automatic stay during the pendency of the plaintiffs' bankruptcy case. Dkt. No. 1 at 1. The plaintiffs provide a lengthy summary of litigation in which they have been involved, both on their own behalf and on behalf of Enduring Love International Center, LLC, a religious organization whose sole member and manager is plaintiff Candie Herr. Id. at 2–7. The plaintiffs state that a default judgment was entered against Enduring Love sometime in late 2022, resulting in further proceedings in state court to enforce the judgment and to garnish Enduring Love's assets. Id. at 3–4. The plaintiffs assert that defendant Scott Halloin, an attorney, represented the parties seeking to enforce the judgment and that Halloin "threatened" the plaintiffs and their counsel with "sanction[s], contempt of court and criminal charges." Id. at 3–5. In late 2024, the plaintiffs sought to vacate the default judgment against Enduring Love, but in March 2025, the state court denied the motion as untimely. Id. at 5. The plaintiffs say

3

that Milwaukee County Circuit Court Judge David Borowski presided over several of these cases. Id. at 3–6.

The plaintiffs allege that on May 13, 2024, defendant Wilshire Quinn Income Fund REIT filed a foreclosure action against them related to an October 2022 loan the plaintiffs obtained for Enduring Love's programs and renovations. Id. at 3, 5. The plaintiffs then filed a voluntary Chapter 7 bankruptcy petition on May 20, 2025. Id. The plaintiffs allege that in June and July 2025, despite the automatic bankruptcy stay, Judge Borowski ordered Candie Herr to appear in the foreclosure proceedings and threatened her with "contempt and jail." Id. at 6. The plaintiffs allege that Wilshire Quinn since has filed a motion in the bankruptcy case, seeking relief from the automatic stay to continue the foreclosure case. Id.

The plaintiffs allege that they have made "every attempt to obtain remedy at the State Courts" but have been unsuccessful, leaving them "no other choice but to file for Bankruptcy Chapter 7 and seek Equity in Federal courts." Id. at 7. The plaintiffs argue that they are entitled to "a mandatory injunction against attorneys at law" because the attorneys have violated Article 14, Section 3 of the United States Constitution, which they say attorneys have an oath to uphold. Id. at 7–8. The plaintiffs argue that the defendants have engaged in a "[p]attern and practice" of constitutional violations "against their oath." Id. at 8. They argue that the state court judgments against Enduring Love are "void" because they were "obtained through default judgments based on defective

4

service and a demonstrable lack of jurisdiction" and on Halloin's false statements. Id.

The plaintiffs allege that Halloin has made false statements to them and to the courts, threatened them, "project[ed] hate and malice towards plaintiffs" and brought "unconstitutional criminal allegations and charges" against non-party Kay Yang. Id. The plaintiffs argue that Halloin "will not stop until he harms everyone around [Yang], including the plaintiffs." Id. The plaintiffs allege that Halloin's settlement demand letters "are acts of terror" against them and violate their constitutional and religious rights. Id. at 9. The plaintiffs contend that Halloin improperly has created litigation pressure in the bankruptcy court by filing an adversary proceeding against them. Id.

The plaintiffs assert that Wilshire Quinn has willfully violated the automatic stay by filing a motion for relief from the stay and by continuing to litigate the state foreclosure proceedings. Id. They allege that Wilshire Quinn has "acted in a bad faith manner" against the plaintiffs, who "agreed to terms of an unconscionable contract and has inadvertently granted the power of sale to the mortgage company, which was never intended." Id.

The plaintiffs contend that they are seeking a "mandatory injunction" to "restrain the defendant(s)" from "acting in concert with aiding the enemy against his oath outlined in Article 14, Section 3 of the United States constitution." Id. at 10. They argue that the court should "compel the person(s) named in a mandatory injunction to undo the wrong or injury with which he or she is charged." Id. They maintain that they have suffered immediate and

5

irreparable harm, including improper default judgments, violations of constitutional rights, violations of the automatic stay, entry into an unconscionable contract, loss of property, interference with their religious ministry and emotional and reputational damage. Id. at 10–11. The plaintiffs argue that the harm they have suffered outweighs the "temporary delay in debt collection" for the defendants. Id. at 11–12. They assert that they have demonstrated a reasonable probability of success on the merits "due to the constitutional violations under article 14, section 3 acting against their oaths of office, and the defendant engaging in a pattern and practice behavioral pattern causing extreme distress to the petitioner." Id. at 12. The plaintiffs assert that there is a strong public interest in the bankruptcy system and the enforcement of the automatic stay. Id.

The plaintiffs ask the court to enter "a preliminary mandatory injunction . . . to restore the status quo as it existed before the defendant acted." Id. at 13. The plaintiffs request a stay of the proceedings in the bankruptcy court pending the resolution of this case and ask the court to sanction and restrain the defendants for violating the automatic stay, to issue "an indefinite/permanent injunction against Scott Halloin for his reckless and frightening behavior towards petitioners," to declare "null and void" all cases and judgments against the plaintiffs that Halloin has been involved in, order "immediate turnover of seized assets to the bankruptcy estate" and to enjoin all defendants from any collection attempts outside of the bankruptcy court. Id. The 287 pages of exhibits the plaintiffs attached to their complaint include,

6

among other papers, dockets and filings related to the state court cases and the bankruptcy case,. See Dkt. No. 1-1.

   C.   Analysis

Although the plaintiffs' reasoning is difficult to follow, it appears that they are asking the court to enjoin the defendants from interfering with the automatic stay and to enjoin Halloin from engaging in "reckless and frightening behavior." The plaintiffs also appear to be asking the court to stay their bankruptcy case, declare various state court judgments "null and void" and order turnover of unspecified "seized assets" to the bankruptcy estate.

The plaintiffs have not filed a separate motion for a preliminary injunction, but their complaint asks the court to issue a "preliminary mandatory injunction." "A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." Ind. Civil Liberties Union v. O'Bannon, 259 F.3d 766, 770 (7th Cir. 2001). To obtain preliminary injunctive relief, the movants must show that (1) their underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) they will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If the movants demonstrate these three factors, the court must then balance the harm to each party and to the public interest from granting or denying the injunction. Id. Even if the plaintiffs had filed a separate motion for a preliminary injunction, they are not entitled to a preliminary injunction because their case is not likely to succeed on the merits.

The plaintiffs cannot pursue their claims for "sanctions" and "legal restraint" against Judge Borowski because he is protected by judicial immunity. The complaint alleges only that Judge Borowski presided over some of the state court cases involving the plaintiffs or Enduring Love. "[J]udges are absolutely immune from awards of damages for acts taken in a judicial capacity, whether or not the judges erred in conducting the litigation." Myrick v. Greenwood, 856 F.3d 487, 488 (7th Cir. 2017) (citations omitted). (See also id. at 489, Posner, J. concurring, stating that judges "are immune from liability for rulings made in the course of their judicial duties"). Judge Borowski "is entitled to absolute immunity from damages, because he acted in a judicial capacity in all respects that plaintiffs contest." Bryant v. Chupack, 93 F.4th 1029, 1033 (7th Cir. 2024); see also Wallis v. Levine, Case No. 12 C 5285, 2013 WL 53896, at *6 (N.D. Ill. Jan. 2, 2013) (claim against state court judge for violation of the automatic stay "is barred by the doctrine of absolute judicial immunity"). The plaintiffs' claims against Judge Borowski involve actions he took in his judicial capacity, so those claims are barred by judicial immunity. The plaintiffs have not established they are likely to succeed on any claim against Judge Borowski.

The plaintiffs also have not established that they are likely to succeed on their claims against Wilshire Quinn for violating the automatic stay. The court first observes that the plaintiffs have asked the wrong court for relief. It is the *bankruptcy* court that has the authority to take action against a creditor who violates the automatic stay. As of July 10, 1984, the district court for the

8

Eastern District of Wisconsin referred all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 to the bankruptcy judges of the Eastern District. If the plaintiffs believe they can prove that Wilshire Quinn violated the automatic stay, they should bring that to the attention of the *bankruptcy* court.

But the record shows that such a motion is unlikely to be successful. The plaintiffs argue that Wilshire Quinn violated the stay by filing a motion for relief from the stay in the bankruptcy court and by continuing to litigate the state foreclosure proceedings. Once a petitioner files a voluntary bankruptcy petition, the Bankruptcy Code imposes a stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. §362(a)(1). Section 362(k) allows parties to seek damages for a willful violation of an automatic stay. 11 U.S.C. §362(k). The plaintiffs filed their bankruptcy petition on May 20, 2025. See In re Herr, Case No. 25-22893-rmb (Bankr. E.D. Wis.). According to the state court docket for the foreclosure case, on May 19, 2025—the day before the plaintiffs filed their bankruptcy petition—the plaintiffs' counsel filed a motion to withdraw in the state case. Wilshire Quinn Income Fund REIT, LLC v. Enduring Love Int'l Center, LLC *et al.*, Milwaukee County Case No. 2024CV3866 (available at http://wcca.wicourts.gov). On May 21, 2025, the state court held a scheduling conference. Id. The state court then held hearings on the motion to withdraw on June 30 and July 28, 2025. Id. On September 22, 2025, the state court held a status conference, at which Wilshire Quinn informed the court that it would

9

be filing a motion to lift the bankruptcy stay as to the plaintiffs and requested permission to pursue discovery relating to the other parties to the case who are not subject to the stay. Id. Wilshire Quinn stated that it would be filing a motion for default judgment against Enduring Love. Id. The state court granted Wilshire Quinn leave to pursue discovery and scheduled a motion hearing for December 8, 2025 on the anticipated motion for default judgment. Id. On the same day—September 22, 2025—Wilshire Quinn filed a motion for relief from the stay in the plaintiffs' bankruptcy case. In re Herr, Case No. 25-22893-rmb, Dkt. No. 76. The bankruptcy court scheduled a hearing on Wilshire Quinn's motion for October 22, 2025. Id., Dkt. No. 83.

None of these actions violate the automatic stay. The state court hearings regarding the plaintiffs' counsel's motion to withdraw were not initiated by Wilshire Quinn and it does not appear that Wilshire Quinn took any actions related to that motion. Wilshire Quinn may have participated in the scheduling conference on May 21, 2025, but it is unclear from the state court docket whether any party informed the state court that—just the previous day—the plaintiffs had filed for bankruptcy relief. Appearing at a previously scheduled court hearing the day after the plaintiffs filed for bankruptcy does not violate the automatic stay, especially when it isn't clear when the state court or Wilshire Quinn learned about the bankruptcy filing. See In re Wolverine Fire Apparatus Co. of Sherwood Mich., 465 B.R. 808, 816 (Bankr. E.D. Wis. 2012) (creditor must be aware of the pending bankruptcy proceeding to be liable for violating the automatic stay).

The foreclosure case also involves several other parties in addition to the plaintiffs; the automatic stay does not apply to those other parties (or to Enduring Love, a separate legal entity from the plaintiffs). Wilshire Quinn did not violate the stay by asking the state court for leave to pursue discovery and a default judgment against those other parties, because the automatic stayed suspended the foreclosure proceedings only as to the plaintiffs (the only parties who sought bankruptcy protection). Nor did Wilshire Quinn violate the stay by filing a motion in the bankruptcy court asking that court to lift the stay. A bankruptcy court has the power to "grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. §362(d). Whether Wilshire Quinn is entitled to that relief is up to the bankruptcy court. The plaintiffs have not established that they are likely to succeed on the merits of their claim against Wilshire Quinn because they have not shown that Wilshire Quinn violated the automatic stay.

The plaintiffs seek an injunction against Halloin, but do not specify the terms of the requested injunction. The plaintiffs have not explained what they want Halloin to stop doing. Do they want him to stop interfering with the automatic stay? If so, as the court has explained, they should have sought that relief from the bankruptcy court. Even if they had sought that relief from the bankruptcy court, the bankruptcy court likely would not have granted it. According to the allegations in the complaint, the only thing Halloin has done since the plaintiffs filed their bankruptcy petition is to file an adversary proceeding in the bankruptcy court. That does not violate the automatic stay;

11

the Federal Rules of Bankruptcy Procedure allow exactly that. See Fed. R. Bankr. P. 7001, *et seq*. Do they want the court to enjoin Halloin from violating Article 14, Section 3 of the Constitution? Again, they should have asked the *bankruptcy* court for that relief, but even if they had, Article 14, Section 3 is the insurrection clause, which discusses an individual's eligibility to hold an office of the federal government. It is not clear how Halloin, a private attorney who does not hold a federal government office, could violate that clause. Do they want Halloin to stop engaging in "reckless and frightening behavior" or pursuing litigation against them? Again, they should have asked the bankruptcy court. But construing those allegations very broadly, it sounds like the plaintiffs may be asserting a tort (personal injury) claim against Halloin, such as a claim for intentional infliction of emotional distress. Tort claims arise under state law, not federal law. Federal courts cannot consider and decide lawsuits alleging violations of state law unless the plaintiffs live in a different state from every defendant (and the amount of claimed damages exceeds $75,000), or unless the state-law claims relate to a federal claim. See 28 U.S.C. §1331 (federal question jurisdiction); §1332 (diversity jurisdiction). The complaint does not state where the parties live, so there is no basis for the court to find that it has diversity jurisdiction. The complaint does not state any federal claims; as the court has determined, the plaintiffs do not appear to have stated a claim for violation of the automatic stay (even if that were this court's decision to make, which it is not), so the court cannot exercise supplemental

jurisdiction over any state law claims. The court has no jurisdiction to consider a tort claim (or any other state law claims) against Halloin.

The plaintiffs also ask the court to declare certain state court judgments "null and void." But the plaintiffs are not parties to any of the state court cases at issue except the ongoing foreclosure case. The judgments they reference were entered against Enduring Love, but under Wisconsin law, "a limited liability company is an entity distinct from its member or members." Wis. Stat. §183.0108. Enduring Love, not the plaintiffs, would have to seek such relief. And if Enduring Love wished to seek such relief, it would need to be represented by a lawyer. "[A] corporation, being nothing more than 'a convenient name for a complex web of contracts . . .' is legally incapable of appearing in court unless represented by counsel—'corporations must appear by counsel or not at all.'" Philos Technologies, Inc. v. Philos & D, Inc., 645 F.3d 851, 857-58 (7th Cir. 2011) (quoting Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1427 (7th Cir. 1985)). *And* even if the plaintiffs *were* parties to the state court judgments at issue or somehow could raise a claim on behalf of their LLC, their claims appear to be barred by the Rooker-Feldman doctrine. "Under the *Rooker–Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482–86 (1983)). "*Rooker–Feldman*, therefore, requires a party seeking review of a state court judgment or presenting a claim

that a state judicial proceeding has violated their constitutional rights to pursue relief through the state court system and ultimately to the Supreme Court." Id. (citing Centres, Inc. v. Town of Brookfield, 148 F.3d 699, 701–02 (7th Cir. 1998)). The court has no jurisdiction to declare these state court judgments void.

The plaintiffs seek "turnover" of unspecified seized assets. Again, they have asked the wrong court. The plaintiffs should have filed this request with the bankruptcy court. But even if they had, that court likely would have denied the request. To the extent these are assets of Enduring Love, the plaintiffs do not have standing to seek turnover because property of the limited liability corporation is not the property of the individual members. If the assets belong to the plaintiffs themselves, the ability to obtain turnover of the bankruptcy estate's assets "is vested exclusively in the trustee." In re Perkins, 902 F.2d 1254, 1257 (7th Cir. 1990). "Section 542 requires turnover to the trustee, not the debtor. Accordingly, the trustee, not [the debtor], has standing to bring a complaint under its provisions." Wenzel v. Green Tree Servicing, LLC, 554 B.R. 861, 863 (Bankr. W.D. Wis. 2016). "When a third party tries to assert an action still vested in the trustee, the court should dismiss the action." Perkins, 902 F.2d at 1258. The plaintiffs lack standing to seek turnover of any assets to the bankruptcy estate.

For all these reasons, the court must dismiss the complaint for failing to state a claim. Although district courts generally give civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is

14

Case 2:25-cv-01518-PP   Filed 10/30/25   Page 14 of 19   Document 5

certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Here, amendment would be futile. The plaintiffs' claims against Judge Borowski are barred by judicial immunity. The plaintiffs should have filed their motion alleging violations of the automatic stay in bankruptcy court, and even if they had, court records establish that Wilshire Quinn has taken no actions that violate the automatic stay. The plaintiffs should have filed their request for injunctive relief against Halloin in the bankruptcy court, and even if they had, they have not shown that they are entitled to a broad, unspecified injunction against Halloin and this federal district court lacks jurisdiction to hear any tort claims against him. The plaintiffs' claims asking the federal court to invalidate state court judgments are jurisdictionally barred. The plaintiffs should have made their turnover request to the bankruptcy court, and even if they had, they lack standing to seek the turnover of property to the bankruptcy estate. The complaint is thorough in its allegations, and the court does not believe any amendment could state a claim for relief.

The plaintiffs also asked this court to stay all proceedings in the bankruptcy court until this case is resolved. The plaintiffs have presented no grounds for the court to stay the bankruptcy proceeding that the plaintiffs themselves voluntarily filed. At the time the plaintiffs filed their bankruptcy petition, they may not have understood how bankruptcy works, but that is not a basis for staying the case. The plaintiffs *did* request a stay from the

15

bankruptcy court pending the resolution of *this* case, which the bankruptcy court denied. In re Herr, Case No. 25-22893-rmb, Dkt. No. 96. In any event, because the court is dismissing this case, the request to stay the bankruptcy case pending the outcome of this case is moot.

The court will dismiss the complaint without leave to amend.

**II.     Motion for Preliminary Hearing and to Seal**

The court is dismissing the complaint and this case without leave to amend, so it will deny as moot the plaintiffs' motion for a preliminary hearing.

The plaintiffs also asked the court to seal this case. The plaintiffs argue that their "lives have been consumed by the dangerous and vengeful campaign of Scott Halloin," which they contend has resulted in the incarceration and bankruptcy of several members of their community. Dkt. No. 4 at 1–2. The plaintiffs believe that Halloin was able to influence the criminal prosecution of Kay Yang and that he has threatened to "do to Candie Herr, what happened to Kay Yang." Id. at 2. They assert that they "fear for [their] physical safety and the safety of [their] church members if these cases become publicly known through unsealed court documents." Id. They argue that "[t]his is a necessary measure to protect [them] from further harm and to allow [their] plea for justice to be heard in a safe and secure forum." Id. at 3.

General Local Rule 79(d) (E.D. Wis.) states that any document or material filed with the court is considered public "unless, at the time of filing, it is accompanied by a separate motion requesting that: access to the document be restricted to the Court and counsel for the parties; or that the document or

16

material, or portions thereof, be sealed by the Court." The motion must describe what the moving party wishes to restrict or seal and must provide "sufficient facts demonstrating good cause for withholding the document or material from the public record." Gen. L.R. 79(d)(2)–(3). "Absent a sufficient factual basis demonstrating good cause sufficient to seal the documents or materials, the motion *must* be denied." Gen. L.R. 79(d)(3) (emphasis added).

The Seventh Circuit places a high burden on parties seeking to seal parts of the judicial record. "Secrecy in judicial proceedings is disfavored, as it makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper." GEA Grp. AG v. Flex-N-Gate Corp., 740 F.3d 411, 419 (7th Cir. 2014). The longstanding rationale for such transparency and presumption of public access is that "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999) (citations omitted). "That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if . . . there is good cause for sealing a part or the whole of the record in that case." Id. (citations omitted). The Seventh Circuit has stated that it "does not look favorably on indiscriminate, reflexive motions to seal the . . . record, but narrow, specific requests will be granted when based on articulated, reasonable concerns for confidentiality." KM Enters., Inc. v. Global Traffic Techs., Inc., 725 F.3d 718, 734 (7th Cir. 2013). Sealing an entire case is appropriate only in

"extreme cases." Jessup v. Luther, 277 F.3d 926, 928 (7th Cir. 2002) ("When there is a compelling interest in secrecy, as in the case of trade secrets, the identity of informers, and the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed.").

The plaintiffs' motion to seal does not comply with this court's Local Rules or the standards imposed by the Seventh Circuit. First, the plaintiffs did not file the motion to seal at the same time they filed their case or the documents they are seeking to seal. Second, they do not specify what material should be sealed; it appears they are asking the court to seal the entire case. Third, the plaintiffs did not file redacted versions of the documents they are asking the court to seal. Fourth, the plaintiffs have not provided sufficient facts establishing good cause. The plaintiffs express fear over retaliation from Halloin, but the plaintiffs named Halloin as a party to this case. As a defendant, Halloin necessarily would become aware of the case via proper service of process; he has a right to know that he has been sued and why. It isn't clear to the court how sealing the case now would protect the plaintiffs from Halloin's alleged retaliation if the plaintiffs named Halloin as a party to the case. The court will deny the plaintiffs' motion to seal.

### III. Conclusion

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim. The clerk will enter judgment accordingly.

The court **DENIES AS MOOT** the plaintiffs' motion for a preliminary

18

Case 2:25-cv-01518-PP    Filed 10/30/25    Page 18 of 19    Document 5

hearing and **DENIES** their motion to seal this case. Dkt. No. 4.

Dated in Milwaukee, Wisconsin this 30th day of October, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**